**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**KOURTNEY IRIS BROWN**                                                            **PLAINTIFF**

**V.                         CASE NO.: 2:11CV00141 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                                    **DEFENDANT**


**MEMORANDUM OPINION AND ORDER**

Plaintiff Kourtney Iris Brown appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act. For reasons set out below, the decision of the Commissioner is REVERSED and the case is REMANDED to the Commissioner for further action.

**I.    Background**

On April 15, 2008, Ms. Brown filed for DIB and SSI, alleging disability beginning on April 1, 2007, due to arthritis, synovitis, osteochondromatosis, scoliosis, dizziness, blurred vision, and a heart condition. (Tr. 88, 92, 110) Ms. Brown's claims were denied initially and upon reconsideration. At her request, an Administrative Law Judge ("ALJ") held a hearing on January 11, 2010, at which Ms. Brown appeared with her non-attorney representative. (Tr. 25) At the hearing, the ALJ heard testimony from Ms. Brown, her mother, and a vocational expert ("VE"). (Tr. 25-39)

The ALJ issued a decision on March 31, 2010, finding that Ms. Brown was not disabled under the Act. (Tr. 12-19) On April 1, 2011, the Appeals Council denied Ms. Brown's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 5-7)

Ms. Brown was nineteen years old at the time of the hearing. (Tr. 92) She was 5'2" tall and weighed approximately 103 pounds. (Tr. 434) She was pregnant, but did not have any other children. (Tr. 31) She had completed high school and was a full-time college student. (Tr. 28)

Ms. Brown testified that she had difficulty picking up objects due to arthritis in her fingers and wrist. (Tr. 30) She had difficulty sleeping, but her main problems were in her fingers, wrists, elbows, and ankles. (Tr. 32) She had good days and bad days. (Tr. 33, 36-37)

Ms. Brown stated that her primary doctor was David Boatright, M.D. (Tr. 29) She was covered by her parent's medical insurance. (Tr. 29) At the time of the hearing, due to her pregnancy, Ms. Brown was taking only folic acid and children's iron vitamins. (Tr. 31)

## II.    Decision of the Administrative Law Judge

The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments)

met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work. Because the ALJ found that Ms. Brown could perform her past relevant work, he ended the analysis at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

The ALJ found that Ms. Brown had not engaged in substantial gainful activity since her alleged disability onset date. (Tr. 14) And he found that Ms. Brown had two severe impairments: rheumatoid arthritis and cardiac murmur. (Tr. 14) The ALJ also found, however, that Ms. Brown did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1526, 416.926). (Tr. 15)

The ALJ determined that Ms. Brown had the residual functional capacity ("RFC") to perform light work, if she could sit for 6 hours in an 8-hour workday, stand or walk for 6 hours in an 8-hour workday, and lift and carry up to 20 pounds occasionally; she could frequently use her hands, feet, and arms for simple grasp, fine manipulations, handling objects, feeling objects, reaching, pushing, pulling and operating controls with the feet and hands. In addition, Ms. Brown could occasionally climb, balance, stoop, crouch, kneel, and crawl. She would have to avoid concentrated exposure to heights and moving machinery, and could tolerate only moderate exposure to chemicals, noise, humidity, dust, fumes, temperature extremes, and vibrations. Ms. Brown had no limitations in her ability to hear and speak. (Tr. 15-19)

The ALJ determined that Ms. Brown's RFC would not preclude performance of her past relevant work as a grocery cashier. (Tr. 19) Accordingly, the ALJ found that Ms. Brown was not disabled. (Tr. 19)

## III. <u>Analysis</u>

### A. *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### B. *Plaintiff's Arguments for Reversal*

Ms. Brown claims the ALJ's step four finding that she could perform past relevant work is not supported by substantial evidence because: (1) the ALJ erred when considering the opinions of her treating physicians; and (2) the ALJ erred in his assessment of her credibility. (#25)

C. *Opinions of Treating Physicians*

Ms. Brown argues that the ALJ failed to properly consider the opinions of her treating physician, Dr. Boatright and an examining physician, Harold H. Chakales, M.D. (#25, p. 12-15) Specifically at issue is a letter from Dr. Boatright dated January 16, 2010 (Tr. 484-485), and a consultative examination performed by Dr. Chakales on September 9, 2009. (Tr. 433-436)

When determining disability, the Social Security Administration "will always consider the medical opinions in [the] case record." 20 C.F.R. §§ 404.1527(b), 416.927(b). Moreover, a treating physician's opinion is generally entitled to controlling weight if well supported by acceptable medical evidence and consistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In this case, the ALJ failed to even mention Dr. Boatright's letter, even though it was certainly part of the case record. (Tr. 12-19) When discussing the opinion evidence, the ALJ only discussed the assessment by Dr. Chakales. (Tr. 18)

The Commissioner admits that the ALJ failed to address Dr. Boatright's letter, but argues that the letter was not a "medical opinion" and that any error in failing to address it was harmless. (#26, p. 4-9) This argument is not persuasive.

"Medical opinions" are statements from physicians that reflect judgments about the nature and severity of impairments, symptoms, or prognosis; what the claimant can still do despite impairments; and the claimant's physical or mental restrictions. 20 C.F.R.

§§ 404.1527(a)(2), 416.927(a)(2). As the Commissioner noted, much of Dr. Boatright's letter described what Ms. Brown reported to him. In fact, Dr. Boatright specifically listed what Ms. Brown reported. (Tr. 484-485) Several of Dr. Boatright's comments, however, reflect his own independent opinions about Ms. Brown's limitations.

Dr. Boatright stated that Ms. Brown had "significant limitations that would limit her ability for repetitive reaching, handling, or fingering." (Tr. 485) He stated that Ms. Brown could use her hands, fingers, and arms in grasping, turning, twisting objects, fine manipulation, and reaching only about 20% of an 8-hour workday. (Tr. 485)

These opinions qualify as medial opinions. If there had been a question as to whether Dr. Boatright actually held these opinions, as opposed to merely repeating Ms. Brown's complaints, the ALJ should have contacted the doctor to resolve the question. See *Goff v. Barnhart,* 421 F.3d 785, 791 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e) (contacting a treating physician is necessary if the doctor's records are inadequate to determine disability, such as when a medical source report contains a conflict or ambiguity that must be resolved).

Dr. Chakales performed a consultative examination on September 9, 2009, at the request of the Social Security Administration. (Tr. 433-436) Dr. Chakales found that in an 8-hour workday, Ms. Brown could frequently use her hands for grasping, handling,

6

and fine manipulation.[1] (Tr. 436) He also noted swelling in Ms. Brown's hands and stated that she could not withstand the rigors of a regular work week. (Tr. 435)

The ALJ found Dr Chakales's written assessment inconsistent with the checklist he completed. (Tr. 18, 434-436) As the Commissioner notes, however, the ALJ included almost every limitation from the checklist in Ms. Brown's RFC. (Tr. 15, 436)

The Commissioner argues that Dr. Chakales's opinion "appeared to be based on a similar statement that Plaintiff made to the doctor when she told him about her impairments, rather than the doctor's objective findings." (#26, p. 8) After thoroughly reviewing the record, the Court cannot find support for the assertion that Dr. Chakales's written opinion was not his own opinion, but instead reflected only what Ms. Brown had told him. When considering the entire assessment, the written report and checklist are not really inconsistent.

On the written checklist Dr. Chakales completed, he was asked to assess Ms. Brown's ability to sustain work-related activities in an 8-hour day. (Tr. 436) A plain reading of "an 8 hour day" would mean one 8-hour day. Dr. Chakales found very few limitations in an 8-hour day. (Tr. 436) He found, however, that Ms. Brown could not "withstand the rigors of an eight hour per day job *for a forty hour work week*." (Tr. 434) (emphasis added) In the very next sentence, Dr. Chakales states, "[s]he does have the ability to move around and is active, but after a stressful day is less active." (Tr. 434)

---

[1] "Frequent" use means one-third to two-thirds of the time. (Tr. 436)

It does not appear that the ALJ made any attempt to contact Dr. Chakales to inquire about the possibly inconsistent opinion. Instead, the ALJ adopted almost the entire checklist as part of his RFC determination. He found the written statements, however, "unsupported." (Tr. 18) If Dr. Chakales's checklist was limited to his opinion about a single day, which would explain the perceived inconsistency, then relying on the checklist to support Ms. Brown's RFC would be error.[2]

The record no doubt contains medical evidence that could be considered inconsistent with Dr. Boatright's and Dr. Chakales's opinions. (Tr. 315, 355, 417-418, 473) And an ALJ may certainly grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record. *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000). The ALJ's failure even to consider Dr. Boatright's opinion, however, was error. The ALJ's reliance on Dr. Chakales's checklist alone was questionable.

The Commissioner argues that even if error, the ALJ's error was harmless. (#26, p. 9) But this assertion is contrary to the record.

The ALJ found Ms. Brown could perform past relevant work as a cashier at a grocery store, where repetitive use of hands, fingers, and arms is essential. Dr. Boatright specifically found limitations in Ms. Brown's ability to reach, handle, and finger. (Tr.

---

[2] An individual's RFC is their ability to do sustained work-related activities eight hours a day, for five days a week. *Prosch*, 201 F.3d at 1016.

485) He stated that Ms. Brown could use her hands, fingers, and arms in grasping, turning, twisting objects, fine manipulation, and reaching only about 20% of the time in an 8-hour workday. (Tr. 485) Dr. Chakales's checklist, which the ALJ clearly relied on in forming Ms. Brown's RFC, indicated that Ms. Brown could frequently use her hands in grasping, handling, reading, and fine manipulation. (Tr. 30, 436) But here, "frequent" use meant only 1/3 to 2/3 of the time. (Tr. 436) If Dr. Chakales found Ms. Brown could do these activities a maximum of 1/3 of a day, which is not a huge difference from Dr. Boatright's 20% finding, Dr. Chakales's checklist would still reflect a "frequent" ability to do these activities.

     Clearly, Ms. Brown would not be able to perform grocery cashier work with significant limitations that would prevent repetitive reaching, handling, or fingering. She also could not perform this work at the level of substantial gainful activity if she could not withstand the rigors of a forty-hour work week. Based on this record, could Ms. Brown really perform grocery cashier work if she could only use her hands for 1/3 of day, which was essentially the ALJ's finding? The record does not contain substantial evidence showing that she could.

     The ALJ relied on VE testimony to find that Ms. Brown could perform her past work as a grocery cashier. (Tr. 19) The entire line of questioning to the VE follows:

> ALJ: In the record as Exhibit – excuse me – well, shoot. Well, Kourtney my computer's acting up. I guess it is Exhibit 23F from Dr. C-H-A-K-A-L-E-S indicating a residual functional capacity occasionally lift up to 10, occasionally lift 11 to 20,

>whatever that means. Sit six hours in an eight hour workday, stand or walk six. Frequent manipulative occasional postural, moderate environmental, that would be consistent with cashier work, would it not Dr. Sales?
>
>VE: Yes, sir.

(Tr. 30)

The ALJ did not provide an age range or educational background for the VE. The ALJ failed to give Ms. Brown's representative a chance to question the VE regarding his response or credentials. (Tr. 27-39) Neither the ALJ nor the VE described the requirements of Ms. Brown's past cashier work. It appears that the VE did not rely on the *Dictionary of Occupational Titles* ("DOT") in forming his response.[3]

The ALJ provided the VE with an RFC with occasional capacity to lift up to 10 pounds. (Tr. 30) According to the DOT, a grocery store cashier must be able to perform light work. See DOT code 211.462-014. Light work requires an ability to frequently, not occasionally, lift or carry objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b); 416.967(b). An occasional ability to lift up to 10 pounds is not sufficient to perform light work.

---

[3] The DOT contains a number of different types of cashier work, with different requirements for exertion.

The limitations in the hypothetical posed to the VE do not match the ALJ's written RFC findings.[4]  (Tr. 15, 30)  The VE's testimony is inconsistent with the DOT.  And these inconsistencies are not explained anywhere in the record.

The VE testimony, which the ALJ relied on, was insufficient.  Accordingly, there is not substantial evidence in the record to show that Ms. Brown could perform her past relevant work.  This makes the ALJ's error in failing to adequately consider the medical opinions material.

On remand, the ALJ should consider Dr. Boatright's opinions and clarify the apparent inconsistencies between Dr. Chakales's checklist and his written assessment.  If necessary, the ALJ should seek VE testimony to determine whether Ms. Brown could perform past relevant work or any other jobs existing in significant numbers in the national economy.  The hypothetical question presented to the VE should match the ALJ's RFC determination.  The VE should also either conform his or her testimony to the DOT, or describe the requirements of the jobs the VE finds Ms. Brown can perform.

D.     *Credibility Determination*

Ms. Brown argues that the ALJ failed to properly assess the credibility of her subjective complaints.  (#25, p. 15-18)  The ALJ evaluated Ms. Brown's subjective

---

[4] When a hypothetical question does not encompass all relevant impairments, the VE's testimony does not constitute substantial evidence.  *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011).

allegations under the requirements of 20 C.F.R. § 404.1529, 20 C.F.R. § 416.929, and Social Security Rulings 96-4p and 96-7p. (Tr. 15)

The ALJ focused primarily on Ms. Brown's daily activities and the objective medical record. (Tr. 16-18) When reviewing the medical record, the ALJ also discussed medication usage and effectiveness (Tr. 17-18) He noted that weather aggravated Ms. Brown's arthritis. (Tr. 16) The ALJ also noted the frequency of Ms. Brown's pain and her alleged functional restrictions. (Tr. 16)

The ALJ's credibility discussion was not exhaustive. He did, however, note almost all of the factors relevant to credibility. See *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 968 (8th Cir. 2003) (objective medical evidence, prior work history, daily activities, duration, frequency, and intensity of pain, precipitating or aggravating factors, dosage, effectiveness, and side effects of medication, and functional restrictions are all factors to consider when assessing the credibility of a claimant's subjective allegations). This Court cannot find error in the ALJ's credibility determination.

## IV. Conclusion

After considering the record as a whole, the Court concludes the decision of the Commissioner is not supported by substantial evidence. The Commissioner's decision is reversed, and this case is remanded for action consistent with this opinion. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 12th day of July, 2012.

_____
UNITED STATES MAGISTRATE JUDGE